IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRELL DUFOUR & KATHY DUFOUR | Civil Action No. 3:10-cv-00013 |
| Plaintiffs, | Judge Kim R. Gibson |
| v. | |
| CARRIZO OIL & GAS, INC., a Texas corporation, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Defendant Carrizo Oil & Gas, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Document No. 14). Plaintiffs filed a Brief in Opposition to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Document No. 19). The Court **GRANTS** in part and **DENIES** in part the Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Document No. 14).

## Factual Background Derived from Amended Complaint

This case arises out of a lease agreement and bank draft document signed by the Plaintiffs, Darrell and Kathy Dufour, and the Defendant, Carrizo Oil & Gas, Inc. The Plaintiffs are fee simple owners of a tract of land located in Decatur Township, Clearfield County, Pennsylvania. The tract of land consists of 302.22 acres. The Defendant is an oil and gas company with various offices located in central Pennsylvania from which they conduct business in the Commonwealth of Pennsylvania. In dealing with Plaintiffs, the Defendant was continually represented by its employee, Jason Causey, who engaged in negotiations on behalf of the

1

Defendant for the purpose of defining the terms and conditions and the means of procurement for a potential oil and gas leasehold arrangement between the Defendant and various parties, including Plaintiffs. Mr. Causey negotiated the terms and conditions of the lease agreement between the Defendant and the Plaintiffs in this case.

On or about July 25, 2008, the Plaintiffs met with Mr. Causey at CNB Bank to have their signatures notarized on a lease. The lease agreement was signed on or about July 25, 2008. Following the execution of the agreement, Mr. Causey tendered a bank draft document to the Plaintiffs and told the Plaintiffs "it is as good as any check." The bank draft document is dated July 24, 2008. The bank draft document provided that the Defendant was to tender a bonus payment in the amount of $377,775.00 to the Plaintiffs. The bonus payment constitutes $1,250.00 per acre for the 302.22 acres of land owned by the Plaintiffs. On the bank draft document, it states that the bonus payment was subject to approval of title and the bonus payment must be deposited for collection within sixty days or the document would be void. The Plaintiffs attempted to deposit the bank draft document with CNB bank but the bank did not recognize the document and refused to tender payment to Plaintiffs. Plaintiffs grew anxious and expressed to Mr. Causey their intent to find another financial institution willing to allow the deposit of the bank draft. Mr. Causey assured the Plaintiffs that such a course of action was unnecessary and that a cashier's check in the amount of the bonus payment would be tendered to Plaintiffs within days.

After not receiving the check, the Plaintiffs made several attempts to speak to Mr. Causey about the status of the bonus check and each time Mr. Causey responded that the check was delayed. After a week, Plaintiffs again contacted Mr. Causey who then stated that the check was coming as soon as Defendant's accounting department finished cutting the next group of checks.

Several months later, in September of 2008, Mr. Causey contacted the Plaintiffs and told them that there was a defect in the Plaintiffs' title and that the bonus payment would not be tendered. In fact, the bonus payment was never tendered to the Plaintiffs. An addendum to the lease agreement contains the following language in the "Special Warranty Title" provision: "Lessee shall have no right to withhold payment to Lessor in the event of a claim or cloud on said title until the issue has been judicially determined." The defect in title was never judicially determined.

Nine months after the alleged termination, the Defendant sent the Plaintiffs a check, in the amount of $30,222.00, in accordance with a "Delay Rental" provision in the lease agreement. In January of 2010, Defendant sent a 1099 tax form to the Plaintiffs for that same amount. The Plaintiffs never received or had an opportunity to deposit the bonus payment of $377,750.00 into their account. Plaintiffs also missed the opportunity to engage in another lease agreement with a competing company, who intended on giving the Plaintiffs the same bonus payment.

### Jurisdiction

The Plaintiffs, Darrell Dufour & Kathy Dufour, are husband and wife and are citizens of the Commonwealth of Pennsylvania residing in Osceola Mills, Clearfield County, Pennsylvania. Defendant Carrizo Oil & Gas, Inc. is organized under the laws of the State of Texas with its principal place of business in Houston, Texas. Plaintiffs seek an amount of damages of at least $377,750.00 plus interest and costs. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), Diversity Jurisdiction, in that the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

## Legal Standard

The decisions of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) represent a significant change in federal pleading standards. In *Iqbal*, the Supreme Court "provide[d] the final nail-in-the-coffin for the 'no set of facts' standard" derived from *Conley v. Gibson*. Following *Iqbal*, conclusory or "bare-bones" complaints will not survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

Under *Twombly* and *Iqbal*, in order to survive a motion to dismiss, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"*Iqbal,* quoting *Twombly* at 570. In *Iqbal*, Justice Kennedy writing for the majority, concluded that a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, citing *Twombly* at 556. "The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaint are plausible." *Fowler v. UPMC Shadyside*, 578 F.3rd 203 (3rd Cir. 2009). Following *Iqbal*, the District Court must dismiss a complaint that pleads facts that are "merely consistent with" a defendant's liability, if the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, quoting *Twombly*, at 557.

In *Fowler v. UPMC Shadyside*, 578 F.3rd 203 (3rd Cir. 2009), the Third Circuit provided the test that district courts should apply when considering a motion to dismiss under *Iqbal*:

> "Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Iqbal* at 1249. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See *Phillips*, 515 F.3rd at 234-35. As the Supreme Court instructed in

4

*Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id."*Fowler*, at 210-211.

## Analysis

Darrell Dufour and Kathy Dufour brought a two-count complaint against Defendant. Defendant filed a motion to dismiss alleging that (1) the complaint does not sufficiently plead that a contract existed that required the Defendant to pay a bonus payment to the Plaintiffs; and (2) the Plaintiffs have not set forth the required elements for a fraud claim. The Court rejects (1) but agrees with (2) and grants in part and denies in part.

### I. The Breach of Contract Claim

Plaintiffs allege that Defendant breached a provision in an oil and gas lease agreement that required the Defendant to pay the Plaintiffs a bonus payment of $ 377, 775.00. The amount constituted $ 1, 250.00 per acre for the 302.22 acres of land owned by the Plaintiffs. Defendant alleges that there was no contract between the parties that required a bonus payment. Specifically, the Defendant alleges that the bonus payment was subject to approval of title as stated on the bank draft and that upon conducting a title search on the Plaintiffs' property there was a defect of title. Defendant alleges that notice was given to the Plaintiffs that the lease was to be terminated based on the defective title and no further payments would be made. The lease agreement was signed by the parties on or about July 25th, 2008. The $377,750.00 bonus payment amount first appeared on a bank draft dated July 24th, 2008.

A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits. *See Insurance Commissioner of Conn. v. Novonty*, 2009 WL 1653553, * 2 (W.D.

Pa. 2009). Under Pennsylvania law, "a lease is in the nature of a contract and is controlled by principles of contract law." *Amoco Oil Co. v. Synder*, 478 A.2d 795, 798 (Pa. 1984). In order to establish a breach of contract claim, Pennsylvania law requires that a plaintiff show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3rd Cir. 2003) (*quoting CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). To prove the existence of a contract, a court sitting in this Circuit must look to: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *ATACS Corp. v. Trans World Comm., Inc.*, 155 F.3d 659, 666 (3d Cir. 1998). Where an ambiguity exists, courts are free to construe the ambiguity against the drafter. *See Bucks Orthopedic Surgery Associates, P.C., v. Ruth*, 925 A.2d, 868, 872 (Pa. Super. Ct. 2007).

Taking the Plaintiffs' well-pleaded facts as true, the facts alleged in the complaint are sufficient to show that the Plaintiffs have a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 201-211 (3d Cir. 2009) citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). It is quite plausible that there was a contract between the parties. Both parties met on July 25, 2008 at the offices of CNB Bank to have their signatures on the lease notarized. After execution of the agreement, the Defendant turned over the bank draft to Plaintiffs to deposit the $377,775.00 for a bonus payment. The lease agreement was signed by both parties. The terms of the lease agreement were sufficiently definite. There is consideration because the Plaintiffs were to lease 302.2 acres to the Defendant in exchange for payments set forth throughout the lease agreement. Furthermore, the bank draft is dated July 24th, 2008 and the lease was dated July 25th, 2008. Although Defendant's allegations that Mr. Causey gave notice to Plaintiffs that there

was a defect in title and that, consequentially, the lease agreement would be terminated carries weight, there was a check sent to Plaintiffs nine months after the alleged termination. The check, in the amount of $30,222.00, is in accordance with a "Delay Rental" provision in the lease agreement. Further fact finding should be allowed to determine whether manifestations of intentions to be bound occurred. Therefore, the Plaintiffs have shown, through well-pleaded facts, that it is plausible that there was an existing contract between the parties.

It is plausible that the Defendant breached its duties in the contract. An addendum to the lease agreement contains the following language in the "Special Warranty Title" provision: "Lessee shall have no right to withhold payment to Lessor in the event of a claim or cloud on said title until the issue has been judicially determined." Claim or cloud on title was never judicially determined. Defendant's argument that it was free to reject the title for whatever reason is incorrect. The law requires an objective standard when interpreting whether to approve title. The Defendant was authorized to terminate the lease agreement only if there was a title defect. Defendant did not possess subjective authority to terminate for any title related reason. Defendant has withheld bonus payments to the Plaintiffs based on the alleged defective title of Plaintiffs' property.

Defendant's actions are in direct conflict with its own contractual provisions because it never had the alleged cloud on title judicially determined. The Special Warranty Title provision must be read together with the provision on the bank draft that requires title to be approved prior to depositing the $377,775.00. Also, it is difficult to ascertain how the bank draft is in conformity with the lease agreement and addendum provisions. All three documents were contemporaneously presented to the Plaintiffs. The Defendant drafted all three documents and *contra preferentum*, an ambiguity will be construed against the Defendant. *See Bucks Orthopedic*

*Surgery Associates, P.C., v. Ruth*, 925 A.2d, 868, 872 (Pa. Super. Ct. 2007). As mentioned above, the issue of how the three documents correlate requires further discovery before the trier of fact can determine whether there was a breach to the alleged contract. Therefore, the Plaintiffs have alleged facts that "justify moving the case beyond the pleadings to the next stage of litigation." *Hollingsworth v. Range-Resources-Appalachian*, LLC, 2009 WL 3601586, at *2 (M.D. Pa. Oct. 28, 2009).

The Plaintiffs' well-pleaded complaint has shown that there are plausible damages in this case. Plaintiffs request that Defendant pay the bonus payment of $377,775.00 based on the contract provisions found in the bank draft. Again, it is difficult to ascertain how the bank draft, lease agreement, and addendum relate without inherent conflict and therefore, further fact finding is necessary. The Plaintiffs have alleged facts that justify moving this case to the next stage of litigation. *Hollingsworth*, at *2.

The Plaintiffs' well-pleaded amended complaint has shown that the Plaintiffs have a plausible breach of contract claim. The facts of the Amended Complaint, taken as true, plausibly show an existence of a contract, a breach of contract, and resulting damages. See *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3rd Cir. 2003). Therefore, this claim requires further discovery and should not be dismissed under FED. R. CIV. P. 12(b)(6).

## II. Fraud Claim

Plaintiffs allege that Defendant's agent, Jason Causey, committed fraud by promising to pay the bonus payment but that, in actuality, the Defendant never planned to pay the bonus payment. Furthermore, Plaintiffs allege that Mr. Causey made false promises in an effort to delay Plaintiffs from depositing the bonus payment stated on the bank draft. Plaintiffs also allege that

8

they missed the opportunity to enter into another lease agreement with a competing company, who intended on giving the Plaintiffs the same bonus payment. Defendant alleges that the gist of the action doctrine precludes the Plaintiffs from bringing this fraud claim in conjunction with the breach of contract claim because the fraud claim is intertwined with the breach of contract claim.

Under Pennsylvania law, a fraudulent misrepresentation claim has six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3rd Cir. 2009) (quoting *Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3rd Cir. 2005)). Fraud consists of anything "calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta*, 527 Pa. 157, 163 (Pa. 1991). In other words, concealing a material fact is no less culpable than an intentionally false statement. *See id.*

Fraud is a tort claim. Under Pennsylvania law, the gist of the action doctrine precludes a plaintiff from bringing tort claims that are collateral to breach of contract claims. *See Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 927 (Pa. Super. Ct. 2004). In other words, if the alleged tortious conduct arose from the parties' contractual relationship and the damages were of the type which would be compensable in a breach of contract claim then the tort claim is "inextricably intertwined with the contract claim[] [and thus] essentially duplicat[ing] a breach of contract action." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 21 (Pa. Super. Ct. 2002).

9

Plaintiffs' allegations that Mr. Causey, who promised to pay the bonus payment, was purposefully delaying payment arises from the contract relationship between the parties. As the Plaintiffs allege in their Amended Complaint, the contract requires the Defendant to pay a bonus payment to the Plaintiffs. Mr. Causey's alleged fraudulent activity deals solely with the bonus payment. Furthermore, the claimed bonus payment and the alleged missed opportunity to enter into another lease are compensable under traditional contract damages (i.e., expectation and reliance damages). Therefore, the Plaintiffs' fraud claim is inextricably intertwined with their breach of contract claim and is precluded by the gist of the action doctrine. The Plaintiff's fraud claim is dismissed under Fed. R. Civ. P. 12(b)(6).

## ORDER

And now, this 25th day of March, 2011, in accordance with the Memorandum, it is hereby **ORDERED** that the Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Document No. 14) is **GRANTED** in part and **DENIED** in part and it is further **ORDERED** that the fraud claim is dismissed with prejudice.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**